**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

**ERROL BARRINGTON SCARLETT, A35-899-292**

        Petitioner,

v.                                              08-CV-0534(Sr)

**THE UNITED STATES DEPARTMENT OF
HOMELAND SECURITY BUREAU OF
IMMIGRATION & CUSTOMS ENFORCEMENT,**
et al.,

        Respondents.

---

## REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #10.

Petitioner commenced this action *pro se*, challenging his detention by the Department of Homeland Security ("DHS"), Bureau of Immigration and Custom Enforcement ("ICE"), since November 25, 2004. Dkt. #1. Although the Court construes plaintiff's complaint as brought pursuant to 28 U.S.C. § 2241 (Dkt. #3), petitioner urges the Court to regard his case as seeking "a temporary restraining order in junction [sic] relief." Dkt. #5.

The Respondent notes that the proper respondent is Martin Heron, Assistant Field Office Director for the Buffalo Federal Detention Facility. Dkt. #7, p.1 n.1. The Respondent opposes the petition on the ground that petitioner's detention is

lawful pursuant to 8 U.S.C. § 1231(a)(1)(B)(i). Dkt. #8, p.2. The Respondent argues that the only obstacle to petitioner's immediate release from detention is his continued challenge to the removal order. Dkt. #8, p.3.

The American Civil Liberties Union and the New York Civil Liberties Union submitted an *amici curaiae* brief arguing that petitioner's detention of more than five years without independent review violates his constitutional right to due process. Dkt. #13. Rather than address the constitutional issue directly, *amici* urge the Court to interpret 8 U.S.C. § 1226(c) to "authoriz[e] detention only for the period of time reasonably necessary to conclude removal proceedings, and as authorizing prolonged detention only when accompanied by procedural safeguards." Dkt. #13, p.11. *Amici* also argue that petitioner's detention pursuant to 8 U.S.C. § 1226(c) is improper, because petitioner was not detained upon his release from incarceration on the underlying charges. Dkt. #13, pp. 19-21. Instead, *amici* argue that petitioner is being detained pursuant to 8 U.S.C. § 1226(a), which requires an individualized bond hearing. Dkt. #13, pp.19-21. Under either statute, *amici* seek an order directing the Respondent "either to release [petitioner] immediately under reasonable conditions of supervision or to provide him with a constitutionally adequate custody hearing." Dkt. #13, p.11.

## BACKGROUND

Petitioner is a native and citizen of Jamaica, who entered the United States as an immigrant on October 29, 1976, at the age of 20. Dkt. #7, ¶ 2; Dkt. #13-1, p.22.

On January 29, 1999, petitioner entered a plea of guilty to the charge of Criminal Possession of a Controlled Substance, Second Degree, in Erie County, New

York and was sentenced to a term of imprisonment of 5 years to life. Dkt. #7, ¶ 3; Dkt. #7-2, p.23. He was released from New York state custody on May 28, 2002. Dkt. #7, ¶ 3.

Removal proceedings were commenced by the issuance of a Notice to Appear dated January 22, 2003, charging petitioner with being subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who had been convicted of a controlled substance offense. Dkt. #7, ¶ 4. Petitioner was placed in custody pursuant to a Warrant of Arrest of Alien on November 25, 2003 and transferred to the Federal Detention Center in Oakdale, Louisiana on December 4, 2003. Dkt. #7, ¶ 5; Dkt. #13-1, p.17. On January 7, 2004, petitioner was subjected to the additional charge of being an alien convicted of an aggravated felony offense as set forth in 8 U.S.C. § 1227(a)(2)(A)(iii). Dkt. #7, ¶ 6; Dkt. #13-1, p.17.

On February 5, 2004, an immigration judge in Oakdale, Louisianna, applying precedent from the Court of Appeals for the Fifth Court, ordered petitioner removed to Jamaica as an aggravated felon. Dkt. #7, ¶ 7. Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), which on July 12, 2004 agreed that petitioner's controlled substance conviction constituted an aggravated felony offense. Dkt. #7, ¶ ¶ 7-8. Specifically, the BIA stated as follows:

> The respondent argues that his conviction would not be classified as an aggravated felony in New York which is the convicting jurisdiction. However, there is no dispute that the respondent was convicted of Criminal Possession of a Controlled Substance in the Second Degree which is a class A-II felony. *See Matter of Salazar* . . . (BIA 2002) (holding that we will follow the precedent decisions of the Fifth Circuit in *United States v. Hernandez-Avalos*, 251 F.3d 505 . . . and *United States v. Honojosa-Lopez*, 130 F.3d 691 . . . in cases, such as this one, which arise in its jurisdiction). In

-3-

>the Fifth Circuit, a felony drug possession conviction is an aggravated felony as defined in section 101(a)(43)(B) of the Act. *Id.* Therefore, under the law of the Fifth Circuit, the respondent has been convicted of an aggravated felony. Accordingly, the appeal is dismissed.

Dkt. #7-2, p.12.

On August 10, 2004, the Consulate of Jamaica issued a travel document for petitioner. Dkt. #7, ¶ 9. Petitioner's removal was scheduled for August 26, 2004, but petitioner filed a petition for writ of *habeas corpus* and motion for emergency stay of removal in the United States District Court for the Eastern District of New York on August 24, 2004. Dkt. #7, ¶ ¶ 9-10. The District Court granted petitioner's motion for stay of removal on August 25, 2004. Dkt. #7, ¶ 10.

On February 28, 2005, the District Court for the Eastern District of New York remanded petitioner's claim to the immigration court for a determination of whether petitioner's conviction constituted an aggravated felony pursuant to *Aguirre v. I.N.S.*, 79 F.3d 315 (2d Cir. 1996). Dkt. #7, ¶ 11. If not, the District Court directed the Immigration Judge to provide petitioner with a cancellation of removal hearing pursuant to 8 U.S.C. § 1229b. Dkt. #7-4, pp.14-15.

On March 23, 2005, the Department of Homeland Security informed petitioner that it had reviewed his custody status and determined to continue his detention. Dkt. #7, ¶ 12.

On June 30, 2005, the BIA remanded petitioner's case to the immigration court, which changed venue to New York. Dkt. #13-3, p.18. Petitioner is currently detained at the Buffalo Federal Detention Facility.

On January 18, 2006, an immigration judge relied upon forensic laboratory reports to find petitioner subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) and ineligible for cancellation of removal. Dkt. #7, ¶ 13; Dkt. #13-1, p.18. Petitioner appealed to the BIA, which dismissed his appeal on May 9, 2006. Dkt. #7, ¶ ¶ 13-14. Specifically, the BIA stated:

> We disagree with the respondent's argument on appeal that the Immigration Judge erred in finding him ineligible for cancellation of removal by relying on a forensics lab report which the respondent argues does not fall within the permissible documents to establish the existence of a criminal conviction . . . . The forensics lab report indicated that the respondent's conviction for felony possession of cocaine . . . involved cocaine base in excess of 5 grams . . . . Therefore, the Immigration Judge determined that the respondent had failed to meet his burden of establishing that he was not barred from applying for cancellation of removal inasmuch as he now appeared to fall within an exception to federal law specifying that simple possession of a controlled substance was a misdemeanor; rather, pursuant to 21 U.S.C. § 844(a), a person convicted of possession of a controlled substance which contains an excess of 5 grams of cocaine base is considered to have been convicted of a felony under federal law.
> As correctly pointed out by the Immigration Judge, the respondent bears the burden of establishing eligibility for the relief requested. There is no question that the respondent was convicted of felony possession of cocaine. In contrast to the respondent's arguments on appeal . . . while the DHS may not be able to meet its burden of establishing removability under section . . . 8 U.S.C. § 1227(a)(2)(A)(iii) (convicted of an aggravated felony) pursuant to *Aguirre v. INS*, the forensics lab report is sufficient to raise the question of whether the respondent is eligible for cancellation of removal and it is the respondent's burden to rebut this evidence.

Dkt. #7-3, p.15. Petitioner sought review and a stay of removal from the Court of Appeals for the Second Circuit, which granted the motion for a stay on June 26, 2006. Dkt. #7, ¶ ¶ 15-16.

The Department of Homeland Security conducted reviews of petitioner's custody status in August of 2006, 2007 and 2008, concluding in each review that petitioner's release would present a threat to the community and pose a risk of flight. Dkt. #7, ¶ 18.

George F. Scott, a Deportation Officer at the Buffalo, New York Field Office for ICE, declares that DHS regularly removes aliens to Jamaica and expects that petitioner will be removed once the court-ordered stay of removal is lifted. Dkt. #7-1, ¶ ¶ 24-25.

## DISCUSSION AND ANALYSIS

**Jurisdiction**

As the United States Supreme Court recognized in *Demore v. Kim* and *Zadvydas v. Davis,* federal courts have jurisdiction to review challenges to the detention of criminal aliens. 538 U.S. 510, 517-18 (2003); 533 U.S. 678, 687 (2001). Accordingly, this Court has jurisdiction to consider this petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241.

**Statutory Challenge to Petitioner's Continued Detention**

*Amici* argue that petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) because he was not taken into custody when he was released from incarceration on the underlying criminal conviction. Dkt. #13, p.18. As a result, *amici* assert that petitioner is being detained pursuant to 8 U.S.C. § 1226(a), which affords the Attorney General discretion to release the petitioner. Dkt. #13, p.18.

The petitioner was originally charged as being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who had been convicted of a controlled

substance offense, and later subjected to the additional charge of being an alien convicted of an aggravated felony offense pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Dkt. #7, ¶ 4. 8 U.S.C. § 1226(c) requires the Attorney General to take such an alien into custody "**when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c) (emphasis added).

This language has led several district courts to hold that the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges. *See Bromfield v. Clark*, No. C06-757RSM, 2007 WL 527511, at *3 (W.D. Wash. Feb. 14, 2007) (collecting cases). In *Quezada-Bucio v. Ridge*, for example, the District Court determined that

> the clear language of the statute indicates that the mandatory detention of aliens "when" they are released requires that they be detained at the time of release. [I]f Congress had intended for mandatory detention to apply any time after they were released, it could easily have used the language *"after* the alien is released," "regardless of when the alien is released," or other words to that effect. Instead Congress chose to use the word "when," which connotes a different meaning.

317 F. Supp.2d 1221, 1224 (W.D. Wash. 2004) (internal citation and quotations omitted).

Similarly, the District Court for the Eastern District of Virginia held that "the mandatory detention statute . . . does not apply to an alien such as petitioner, who has been taken into immigration custody well over a month after his release from state custody." *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007). The District Court explained:

> The term "when" includes the characteristic of "immediacy," referring in its primary conjunctive sense, to action or activity occurring "at the time that" or "as soon as" other action has ceased or begun. See 20 The Oxford English Dictionary 209 (2d ed.1989); The American Heritage Dictionary of the English Language (4th ed.2000). . . . Additionally, it would be contrary to the plain language of [8 U.S.C. § 1226(c)]'s command that the Attorney General take into immigration custody certain criminal aliens "when" those aliens are released from state custody to include those aliens who had "already" been released from state custody. Moreover, statutory language should not be construed in a way that renders a term surplusage.

*Id.* (internal citations omitted). Most recently, in *Oscar v. Gillen*, the District Court in Massachusetts determined that Respondent's interpretation of 8 U.S.C. § 1226(c) to apply "any time after the alien is released," "perverts the plain language of the statute." 595 F. Supp.2d 166, 169 (D. Mass. 2009).

The Court finds the analysis set forth by these districts courts persuasive. Applying that analysis to the instant case, petitioner's detention was not authorized by 8 U.S.C. § 1226(c) because petitioner was released from incarceration nearly eighteen months prior to his immigration detention. Instead, petitioner's detention was authorized by 8 U.S.C. § 1226(a), which affords petitioner the opportunity for an individualized bond hearing before an immigration judge. *See Waffi*, 527 F. Supp.2d at 488; *Bromfield*, 2007 WL 527511, at *5; *Quezada-Bucio*, 317 F. Supp.2d at 1231.

**Constitutional Challenge to Petitioner's Continued Detention**

Assuming for the sake of argument that petitioner's initial detention pursuant to 8 U.S.C. § 1226(c) was proper, petitioner remained in detention pursuant to 8 U.S.C. § 1226(c) until July 12, 2004, more than seven months after he was placed in custody, when the BIA determined that petitioner was removable. Dkt. #7, ¶ 8. At that

point, the authority for petitioner's continued detention was transferred to 8 U.S.C. § 1231(a)(1)(A).

8 U.S.C. § 1231(a)(2) provides that the Attorney General shall detain an alien during the removal period. 8 U.S.C. § 1231(a)(1)(A) provides that the removal period encompasses 90 days from the date the order of removal becomes administratively final[1] or, if the removal order is judicially reviewed and the court orders a stay of removal, the date of the court's final order. As petitioner obtained a stay of removal from the District Court for the Eastern District of New York on August 25, 2004, approximately a month and a half after his initial order of removal became administratively final, the removal period set forth in 8 U.S.C. § 1231(a)(1)(A) was tolled.

In *Wang v. Ashcroft*, the Court of Appeals for the Second Circuit determined that "where a court issues a stay pending its review of an administrative order, the alien continues to be detained under [8 U.S.C. § 1226(c)] until the court renders its decision." 320 F.3d 130, 147 (2nd Cir. 2003). Thus, petitioner's detention between August 25, 2004, the date the stay was ordered, and February 28, 2005, when the District Court for the Eastern District of New York remanded petitioner's claim to the immigration court, was pursuant to 8 U.S.C. § 1226(c).

Petitioner remained in custody pursuant 8 U.S.C. § 1226(c) for an additional fourteen months while the immigration court and BIA determined that petitioner was ineligible for cancellation of removal because forensic laboratory reports

---

[1] 8 U.S.C. § 1231(a)(6) permits detention beyond the removal period for aliens ordered removed pursuant to, *inter alia*, 8 U.S.C. § 1227(a)(2).

indicated he possessed more than 5 grams of cocaine base. Within two months of the conclusion of the second round of administrative proceedings, petitioner obtained a second stay of removal. The second stay of removal has been in place for two years and ten months. As a result, petitioner's continued detention of five years and five months encompasses approximately five years pursuant to 8 U.S.C. § 1226(c), and five months pursuant to 8 U.S.C. § 1231(a).

8 U.S.C. § 1231(a)

In *Zadvydas v. Davis*, the United States Supreme Court upheld the mandatory detention provision of 8 U.S.C. § 1231(a)(6), so long as the detention was limited to "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. The Supreme Court recognized six months as a presumptively reasonable period of detention pursuant to this statute, but recognized that

> This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In the instant case, petitioner has spent approximately five months in detention pursuant to 8 U.S.C. § 1231(a), and the Court of Appeals' stay of removal has tolled the presumptively reasonable period of time for Respondent to effectuate petitioner's removal. Moreover, there is every reason to believe that petitioner can be removed to Jamaica expeditiously should his appeal fail. Thus, there is nothing constitutionally impermissible about the length of time petitioner has been detained pursuant to 8 U.S.C. § 1231(a).

<u>8 U.S.C. § 1226(c)</u>

In *Demore v. Kim*, the United States Supreme Court rejected a due process challenge to the mandatory detention provision of 8 U.S.C. § 1226(c). 538 U.S. 510. In reaching its conclusion, the Supreme Court distinguished detention during the course of removal proceedings pursuant to 8 U.S.C. § 1226(c) from detention following a determination of removability pursuant to 8 U.S.C. § 1231(a)(1)(A), emphasizing that

> Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*.

*Id.* at 529. In his concurring opinion, Justice Kennedy recognized that

> since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.

*Id.* at 532.

Following *Kim*, several Courts of Appeals have considered challenges to lengthy confinement pursuant to 8 U.S.C. § 1226(c) by aliens whose removal proceedings have meandered their way through administrative and appellate processes and determined that due process required individualized bail hearings. In *Tijani v. Willis*, for example, the Court of Appeals for the Ninth Circuit interpreted 8 U.S.C. § 1226(c) "as applying to expedited removal of criminal aliens." 430 F.3d 1241, 1242 (9th Cir. 2005). The Court of Appeals determined that detention under 8 U.S.C. § 1226(c) for two years and eight months was "not expeditious" and granted the writ unless the government provided petitioner with a hearing before an Immigration Judge with authority to grant him bail unless the government established that he was a flight risk or would be a danger to the community. *Id.* In a concurring opinion, Judge Tashima noted that

petitioner had

> been detained for the last 30 months in spite of the fact that
> he can raise substantial arguments against his removal that
> necessitate a hard look. Such detention without the
> possibility of release, based on nothing more than the fact
> that he may someday be removable, is clearly a violation of
> his due process rights.

*Id.* at 1248-49.

In a subsequent opinion, the Court of Appeals for the Ninth Circuit expanded upon their reasoning in *Tijani*,[2] but continued to "hold that the government may not detain a legal permanent resident . . . for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention." *Casas-Castrillion v. Dep't of Homeland Security,* 535 F.3d 942, 949 (9th Cir. 2008). The Court of Appeals noted that a Post-Order Custody Review "falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA." *Id.* at 951-52.

In *Ly v. Hansen*, the Court of Appeals for the Sixth Circuit determined that it was not appropriate to set a presumptively reasonable maximum time period for pre-removal detention because "hearing schedules and other proceedings must have leeway for expansion and contraction as the necessities of the caseload warrant." 351 F.3d 263, 271 (6th Cir. 2003). However, the Court of Appeals concluded that even accounting for "the inevitable elasticity of the pre-removal period," eighteen months detention

---

[2] The Court of Appeals for the Ninth Circuit determined that once the BIA affirmed petitioner's order of removal, statutory authority for his continued detention shifted from the mandatory provision of 8 U.S.C. § 1226(c) to the discretionary authority provided by 8 U.S.C. § 1226(a). *Casas-Castrillion*, 535 F.3d at 947-48.

-12-

pending removal proceedings was unreasonable and required granting of the writ. *Id.* at 272-73. In their assessment of reasonableness, the Court of Appeals noted that courts must be sensitive to the possibility of dilatory tactics by the removable alien, but must also recognize that:

> appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.* at 272; *see D'Alessandro v. Mukasey*, No. 08-CV-914, 2009 WL 799958, at *12 (W.D.N.Y. Mar. 25, 2009) (agreeing that "an alien should not be effectively punished for pursuing applicable legal remedies."), *aff'd*, 2009 WL 931164 (W.D.N.Y. Apr. 2, 2009).

The Court of Appeals for the Sixth Circuit also considered the relationship between the alien's incarceration on the criminal charges rendering him removable and the period of time in which the alien was detained during removal proceedings. *Id.* at 271 (petitioner "served criminal sentences for his two convictions of a total of 12 months; he spent considerably more time than that in INS custody awaiting a determination on removal."). Finally, the Court of Appeals was conscious of the fact that, unlike the petitioner in the instant case, Ly would not be removed upon conclusion of the proceedings because his native country did not have a repatriation treaty with the United States. *Id.* at 270.

In a case with facts similar to those in the instant case, the District Court in Connecticut determined that petitioner's continued detention under 8 U.S.C. § 1226(c) was unconstitutional and directed that the Respondents hold an individualized bond hearing where petitioner had already spent more than two years in detention under 8 U.S.C. § 1226(c) and was awaiting further proceedings by the BIA following remand by the Court of Appeals for the Second Circuit. *Fuller v. Gonzales*, No. Civ. 04CV2039, 2005 WL 818614 (D. Conn. April 8, 2005). In reaching that conclusion, the District Court reasoned that

> Although *Kim* held that the desire to ensure an alien's presence at future proceedings and the desire to protect the community provide sufficient justification for a short mandatory detention, the sufficiency of that justification decreases as the length of incarceration increases. When Congress imposed mandatory detention through [8 U.S.C. § 1226(c)], it was effectively saying that the risk that some aliens within section [1226(c)'s] enumerated categories will either not show up for future proceedings or prove dangerous to the community justifies detaining all aliens in that category, even those who do not actually pose either risk. In other words, Congress found that it is necessary to briefly detain even those aliens who pose absolutely no risk at all in order to avoid the risks posed by other aliens.
> . . . Although the Supreme Court held such extreme deprivation is justifiable when it is only for a short period of time, there is nothing to suggest that the Court would have held such deprivation appropriate for the unusually lengthy period of time at issue here.

*Id.* at *5. The District Court also noted that petitioner's detention pursuant to 8 U.S.C. § 1226(c) was "more than twice the amount of time she served for her underlying criminal conviction" with "no indication" that her detention was "anywhere near over." *Id.*

In the instant case, petitioner has already spent five years in detention pursuant to 8 U.S.C. § 1226(c), and nearly five and a half years in immigration detention

overall. This exceeds his incarceration for the underlying criminal conviction by nearly two years. Moreover, if he is successful on his appeal currently pending before the Court of Appeals for the Second Circuit, *i.e.*, it is determined that a conviction for criminal possession of a controlled substance, second degree, does not constitute an aggravated felony and that it is improper to rely upon forensic lab reports which were not incorporated into the plea agreement to find that petitioner possessed more than 5 grams of cocaine-base and is, therefore, ineligible for cancellation of removal, this matter will be remanded to the immigration court to determine whether he should be afforded cancellation of removal, thereby incurring additional detention pursuant to 8 U.S.C. § 1226(c). These arguments are far from frivolous. Finally, it is clear that the delay in the resolution of petitioner's removal proceedings is attributable to the Respondent's attempts to forum shop the underlying immigration proceedings, the backlog at the BIA and the significant caseload of the Court of Appeals. Upon consideration of all these factors, it is the opinion of this Court that petitioner's detention has far exceeded the parameters of the "brief" or "limited" period of time which the United States Supreme Court deemed constitutional in *Demore v. Kim*.

## **CONCLUSION**

Based on the foregoing, it is hereby **RECOMMENDED** that the writ be **GRANTED** unless the Respondent affords petitioner a hearing, within 30 days of Chief Judge Arcara's Order adopting this Report, Recommendation and Order, before an Immigration Judge with the power to grant him bail unless the government establishes that petitioner is a flight risk or a danger to the community.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to petitioner and to counsel for the *amici curiae* and for the Respondent.

**SO ORDERED**.

**DATED:** **Buffalo, New York**
**May 12, 2009**

   **s//H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**